# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Oscar Combs Sr.,**
**Petitioner Below, Petitioner**

**vs.) No. 20-0473** (Mercer County 19-C-194)

**Donnie Ames, Superintendent, Mt. Olive**
**Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Oscar Combs Sr., by counsel Robert P. Dunlap, appeals the fifty-eight page order of the Circuit Court of Mercer County, entered on June 11, 2020, dismissing his petition for a writ of habeas corpus. Respondent State of West Virginia appears by counsel Patrick Morrisey and Lara K. Bissett.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

This petition for a writ of habeas corpus stems from petitioner's convictions of murder, robbery, and conspiracy, in connection with the murder of James Butler. As a result of his convictions, petitioner was sentenced to life in prison without mercy for murder, eighty years for robbery, and one to five years for conspiracy, with the sentences to run consecutively.

Prior to the instant petition, petitioner appealed those convictions to this Court, and we affirmed the convictions by memorandum decision in *State v. Combs*, No. 15-0405, 2016 WL 3304115, *1-*2 (W. Va. June 8, 2016) (memorandum decision).[1] According to the memorandum decision:

---

[1] In his direct appeal, petitioner alleged that the trial court erred when it denied his pretrial motion to transfer venue from Mercer County. He also argued that the prosecution failed to sufficiently provide the identity of the deceased at the scene. However, at oral argument, petitioner withdrew the venue argument and proceeded solely on the issue of the identification of the deceased.

[o]n April 22, 2011, as Tommy Thomas was looking for scrap metal in a remote area of Wyoming County, on Herndon Mountain near the Mercer County line, he discovered a dead body beyond the crest of an earthen bank surrounding part of a makeshift dump. The body—clad in jeans, a flannel shirt, and boots—had decomposed such that it could not readily be identified. No personal effects were found on the body, and the pockets of the jeans had been cut open. An autopsy revealed that the victim had been shot in the back of the head by a small-caliber handgun. The body was fingerprinted and the exemplars compared to a police databank, whereby the victim was identified as Butler, who had disappeared while driving to Pineville from Summers County on April 4, 2011. According to carrier records, Butler had last used his cell phone in Mercer County to text his girlfriend, but ground and air searches of the vicinity had proved fruitless.

The investigation remained stagnant until the West Virginia State Police received a tip in October 2013. The tip resulted in the arrest of Combs, his wife Linda, and their son, Oscar Combs, Jr. ("Junior"), all of whom were indicted by the grand jury in Mercer County on June 10, 2014, and charged in Count 1 with first-degree murder, *see* W. Va. Code § 61-2-1 (1991), in Count 2 with first-degree robbery, *see id.* § 61-2-12(a)(1) (2000), and in Count 3 with conspiracy to commit murder, *see id.* § 61-10-31 (1971).

The proceedings against Combs were severed, and his trial commenced before a jury on January 6, 2015. Junior appeared as a witness for the prosecution in accordance with an agreement whereby he pleaded guilty to Counts 1 and 2 of the indictment, for which he was sentenced on the murder to life imprisonment with the possibility of parole, and to a consecutive twenty-five-year term for the robbery. Junior testified that he was eighteen years old on April 4, 2011, and that his mom had awoken him before dawn that morning, handing him a .22 revolver that he often carried around on trips with his dad. Combs retrieved a shotgun, and he and Junior left in the family's Ford Bronco to travel to Herndon Mountain. Combs and Butler were acquainted from having worked together, and they had arranged a meeting that morning so that Butler could obtain some cable clamps he needed to construct a building. According to Junior, however, the meeting was intended to waylay Butler, in that Combs knew that Butler had recently been paid and was therefore likely to have considerable cash on his person.

Junior told the jury that he and Combs got to the meeting site a few moments before Butler, parking the Bronco alongside the road just on the Mercer County side of Herndon Mountain. Combs produced a .32 semi-automatic from his hooded sweatshirt and stuck the pistol in Junior's ribs. Combs demanded that Junior use the .22 to shoot Butler, who by then had arrived at the scene in his Chevrolet S-10 pickup, pulling in behind the Bronco. Butler retrieved the cable clamps from the Bronco's open hatch, after which he turned around to walk back to his truck. Combs shoved his pistol in Junior's back, impelling Junior to follow Butler and shoot him in the head from behind. Junior complied.

Junior recounted that, after he and Combs placed Butler's body in the bed of the S-10, he got in the driver's seat of the pickup and followed Combs to a secluded gas well road. There, the duo used supplies in the Bronco to paint the truck. Junior drove the Bronco back home for some gasoline to fuel the truck, and, by the time he returned, the body had been taken away. Junior followed Combs home with the pickup, which Combs disassembled. Combs sold some of the parts, with the rest being buried or otherwise disposed of. Combs gave away the .22, but the revolver was eventually recovered and Junior identified it at trial as the murder weapon; fragments recovered from Butler's skull were determined through ballistic examination to have been the remains of a .22 bullet that could have been fired by the revolver. Junior added that, not long after the incident, he heard Combs express disappointment concerning the scant proceeds of the robbery, lamenting to Linda that "Bo wasn't worth doing."

On August 19, 2019, petitioner filed the instant petition for a writ of habeas corpus alleging thirty-three grounds for relief. These included lack of jurisdiction of the trial court; pretrial publicity; mental competency at the time of the crime, cognizable even if not asserted at the proper time or if the resolution was not adequate; failure of counsel to take an appeal; coerced confession; suppression of helpful evidence by the prosecutor; the State's knowing use of perjured testimony; ineffective assistance of counsel; irregularities of the arrest; excessive and denial of bail; no preliminary hearing; illegal detention prior to arraignment; composition of grand jury or its procedures; failure of the court to provide a copy of the indictment to the petitioner; defects in the indictment; improper venue; failure of trial counsel to subpoena witnesses; prejudicial joinder of defendants; non-disclosure of grand jury minutes; refusal to turn over witness notes after witness has testified; incompetency at the time of offense as opposed to time of trial; claims concerning the use of informers to convict; constitutional errors in evidentiary rulings; instructions to the jury; prejudicial statements by the trial judge; prejudicial statements by the prosecutor; sufficiency of the evidence; defendant's absence from part of the proceedings; improper communications between the prosecutor or a witness and the jury; defective indictment; and cumulative error. After conducting an omnibus hearing on the petition and considering all of the evidence and the record in its entirety from the underlying case, the habeas court issued a lengthy order denying petitioner relief on all grounds.

As this matter is an appeal from the circuit court's order denying habeas relief, we review as follows:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Meadows v. Mutter*, 243 W. Va. 211, 842 S.E.2d 764 (2020).

3

"On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).

Here, we conclude that petitioner failed to show that he is entitled to the relief sought. Petitioner's brief to this Court largely makes the same arguments that he made before the habeas court and he fails to identify or allege any specific error in the habeas court's conclusions on those issues that are supported by the record. In light of our conclusion that the circuit court's order and the record on appeal reflect no clear error, we hereby adopt and incorporate the circuit court's well-reasoned findings of fact and conclusions of law from its fifty-eight page order and direct the Clerk to attach to this memorandum decision a copy of the circuit court's June 11, 2020, "Order Denying Petitioner's Petition for Writ of Habeas Corpus Relief."

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 25, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment